# MARRIAGE.

### HOLGATE *against* CHENEY.   *Chittenden*, 1819.

WHENEVER it is necessary that a minister be certified of consent, according to the
Statute, before he proceed to marry a minor, such consent must be of the parent, if either
be living.

A master, within the meaning of the Act, cannot be constituted by verbal contract.

THIS was an action of debt, on the Statute, for marrying
Charity Bevins, a minor, to John Battis Bazin, without the con-
sent of plaintiff, who claims the penalty of the Statute, as mas-
ter of said Charity.

*Plea*—General issue.

On the trial, at June term, 1819, it appeared in evidence,
that the defendant, who was an ordained minister of the gospel,
settled in Milton, in the county of Chittenden, did, on the 17th
day of December, 1816, join the said John and the said Char-

ity in marriage ; that said Charity was a minor, and resided at the time of said marriage, with the plaintiff. It also appeared, in evidence, that the mother of said Charity (the father being dead) agreed with the plaintiff that the said Charity should live with the plaintiff until she arrived at the age of eighteen years, but the agreement was never reduced to writing.

There was no evidence that said plantiff ever gave his consent to the said marriage ; but, there was evidence introduced, that the mother of said Charity is still living, and that the defendant, at the time of said marriage, was informed that the mother had given her consent to said marriage, and that said Charity was not bound to the plaintiff; and, there was evidence introduced, tending to shew that the mother actually gave her consent to said marriage.

From this statement, the defendant insisted that the *plaintiff* could not maintain this action ; that the right of action, if any, belonged to the mother, and, at any rate, *this* plaintiff had no right to the penalty of the Statute.

The defendant also insisted, that, as he was *certified* of the consent of the mother, as aforesaid, it was immaterial whether the certificate was true or false, provided he supposed it was true.

The Judge charged the Jury, that if they found the mother had agreed with the plaintiff, that the said Charity should live with the plaintiff until she arrived at the age of eighteen years, and that the said agreement was still in force, (the said Charity at the time of the said marriage, living with the plaintiff, and the mother not interfering,) that the plaintiff could maintain this action, and prosecute the same to effect, and that whether she had or had not given her consent.

Verdict for plaintiff, and

Motion for new trial, founded on exceptions to the opinions and charge of the Judge.

In support of the motion, *Van Ness* and *Swift* :

1. That when this action is sustainable, by a *master*, it must be one who is *in loco parentis* ; that the contract between the

mother and the plaintiff, gave the plaintiff no right to the ser-
vice of the daughter ; the mother could not bind the daughter,
she having a right to choose her own guardian ; and, that a
binding, by parol, was void. Reeves' Dom. Rel. 341–2–3–4.
8 Term Rep. 379. 1 Salk. 68. 1 Burns' Jus. 60. 8 John.
328.

2. That if the contract was valid, and there has been a for-
feiture of the penalty ; yet the *plaintiff* cannot maintain this
action. The object of the Statute was not to give a compen-
sation for loss of service, but to secure to the natural relations,
that so important a contract, as the marriage of a child, should
not be completed without the consent of those most interested
in the future welfare of the parties, or if there are no parents,
then to those who are in loco parentis. While the *father* is
living, the forfeiture is incurred by marrying without *his* con-
sent; if he be dead, the *mother* succeeds to the same rights ;
all the relations of parent, master, and guardian, may exist at
the same time, and the consent of the master cannot be suffi-
cient, when there is a parent.

3. The certificate of the consent of the mother, proved, in
this case, is sufficient to save the defendant from the penalty.

4. If this certificate is not sufficient, yet proof of actual con-
sent, is all the Statute requires.

*Contra.* *Farrand* and *Allen :* This action may be sustained
by any person, standing in the relation of master; the mother
was the natural guardian of the infant, (the father being dead,)
and had all the rights over her that her father could have, until
the Court of Probate should interfere, and appoint a guardian ;
her verbal contract, binding the child to the plaintiff, was valid.
The common law does not require such a contract, to be in
*writing*, and we have no Statute on the subject.

2. The action must be brought by the person having the
control of the infant, and if there be no *such* person, then by
a prochin ami ; the Statute intends to give the penalty to the
person injured ; after the infant is bound to a master, the parent

has no control of the time or service, and is not holden for any misfeasance of the infant.

By the Act to enforce a due observance of the Sabbath, Stat. 1 vol. p. 276, parents, guardians, and masters are liable for the fines, &c. yet it would not be contended, that, after the child was bound out, the parent would be liable for the fine incurred by the minor. As the parent is not entitled to the services, or subjected to the misfeasances of the child, he or she cannot maintain this action for the penalty; the consent of the mother, in this case, cannot protect the defendant; the consent of the master was necessary, and *he only* could bring the present action.

3. If the certificate of the mother's consent, was sufficient to justify the defendant, yet such certificate ought to have been in writing; the Statute intends some higher evidence should be required by the minister, than mere verbal information.

4. It does not appear, from the case, that any actual consent of the mother was given.

By the Court. The object of the 4th section of the Act, (1 vol. 265) regulating marriage and divorce, cannot be, to give a compensation for loss of service; it is very inadequate to that object; the penalty is not proportioned to such an injury; the loss of service may be, in some cases, for a single day; in others, many years, and the penalty is given, in a certain case, to those who are not entitled to the service of the minor, i. e. to the next friends. The object must be, to prevent clandestine marriages; the consent therefore, is required of those whose relative situation, to the minor, is such, that they are presumed to have the greatest interest in preventing an imprudent connexion. Whatever may be the situation of the minor, whether resident in the family of the parent or parents, or bound out as an apprentice, or servant, still the interest of the *parent*, in the marriage of the minor, far exceeds that of the *master*, or any other person. Independent of the anxiety of the parent, for the future welfare of the child, the

W

pecuniary interest is great and permanent ; for, by the 9th section of the Act, concerning "Legal settlement, and providing for the poor," Stat. 1 vol. p. 387, *either* parent is bound to support the *grand-children,* in a certain event.

Whenever it is necessary that the Minister or Justice of the Peace, be certified of consent, before he proceed to join in marriage, any person, such consent must be of the parent, if either be living ; if the marriage be celebrated, without such consent, the forfeiture is incurred.   In this case, the consent of the mother would have justified the defendant, and the Judge ought so to have directed the Jury.

2.  The Court consider that the *master,* within the meaning of the Act, is not *any one* who stands in that relation to the minor ; a single day's service, or a mere service, at the will of the minor or his guardian, will create this relation ;  but, such a master is not within the meaning of this Act ;  he must be *in loco parentis,* one who has the control of the minor for a certain period ; this control, or power, over the minor, cannot be transferred from a parent, by a mere verbal agreement ;  this was an exception to the effect of verbal agreements, at *common law,* and this principle is perfectly understood by every individual in community ; no parent ever considers his child bound for a certain period, to a master, unless the contract be at least *in writing ;* a mere verbal contract is always considered to be at the will of either party.

If common law principles are established by the universal consent and practice of a community, the principle which requires a binding to service, to be by something more than a mere *verbal* agreement, is so established.

New trial granted.

---

MASTER AND SERVANT—See Marriage.

---

MESNE PROFITS—See Mortgage 4.